945 F.2d 418
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Dennis L. WAGSTAFF, Petitioner,
v.
DEPARTMENT OF the AIR FORCE, Respondent.
 No. 91-3032.
 United States Court of Appeals, Federal Circuit.
 Sept. 27, 1991.
 
 Before MICHEL, Circuit Judge, SKELTON, Senior Circuit Judge, and LOURIE, Circuit Judge.
 MICHEL, Circuit Judge.
 
 DECISION
 
 1
 Dennis L. Wagstaff appeals the decision of the Merit Systems Protection Board, affirming his removal from his position as a Pneudraulic Systems Mechanic with the Air Force, Wagstaff v. Department of the Air Force, No. DE07529010194 (May 10, 1990), which became final on September 24, 1990, when the Board denied review. Because the offense sustained--using cocaine--was supported by substantial evidence, including petitioner's admission, and because, given the sensitivity of his work on military aircraft and other relevant factors, nexus was established and the penalty of removal was within the bounds of reasonableness, we affirm.
 
 DISCUSSION
 
 2
 * Wagstaff first argues that the agency failed to meet its burden of proving a nexus between the misconduct and the efficiency of the service. He points out that the only symptom of his one, lunch-time drug use was a headache and that his supervisor testified that Wagstaff's performance was not seen to be impaired following the drug use. Based on these facts, he argues that "there is no evidence to show that Wagstaff was significantly impaired when he returned to duty." Brief of Petitioner at 7.
 
 
 3
 Wagstaff's argument confuses the offense of using illegal drugs with the specific effects of use of drugs in this case. Even assuming, arguendo, that Wagstaff was not impaired on the afternoon in question, this fact is not dispositive on the issue of nexus. An agency need not show that a particular employee was impaired on a particular occasion by use of a certain drug; nexus can be established by demonstrating generally that drug use by employees "interfere[s] with or adversely affect[s] the agency's mission," Kruger v. Department of Justice, 32 M.S.P.R. 71, 74 (1987), which, in this case, is to maintain and repair crucial systems on high-performance military aircraft. See McClain v. Department of Navy, 20 M.S.P.R. 464, 466-67 & n. 2 (1984) (nexus established where even off-duty drug possession had a deleterious effect on the military mission, despite no showing that petitioner's performance as a store worker was affected).
 
 
 4
 The efficiency of the service is necessarily diminished when the particular mission is jeopardized by employee misconduct. Here, the threat to the mission is obvious: An airplane mechanic who returns to work after using drugs at lunch time is thereby more likely to make a mistake, one which might even cause an aircraft to crash. This alone demonstrates nexus. To accept Wagstaff's argument would effectively mean that the Air Force might have to wait to remove him until after he was observed making serious errors or, indeed, after an airplane crashed. This of course would be absurd.
 
 
 5
 The Board's decision on the issue of nexus must be affirmed.
 
 II
 
 6
 Wagstaff also argues that "[e]ven assuming the necessary nexus, the penalty imposed was not reasonable under the circumstances." Brief of Petitioner at 6. The MSPB has authority to mitigate an agency-imposed penalty only when that penalty is "clearly excessive with respect to the sustained charges, i.e., is arbitrary, capricious or unreasonable or exceeds the agency's Table of Penalties." Hayes v. Department of the Navy, 727 F.2d 1535, 1540 (Fed.Cir.1984). In reviewing the appropriateness of a penalty, we have held that the Board must first ascertain that the agency considered all the factors set forth in the Board's decision in Douglas v. Veterans Admin., 5 M.S.P.R. 280, 313 (1981), that were relevant to the case. Hayes, 727 F.2d at 1540. The Board must then satisfy itself that the agency weighed the factors responsibly, so that the decision reached is "within the bounds of reasonableness." Id.
 
 
 7
 * Wagstaff contends that the agency did not properly apply the 12 Douglas factors in selecting the penalty, and that under the circumstances of this case the penalty of removal was not reasonable. Brief of Petitioner at 21. Specifically, Wagstaff points to the third Douglas factor, his "past disciplinary record," Douglas, 5 M.S.P.R. at 305, which had been virtually perfect. He similarly contends that the fourth factor, "his past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability," id., was excellent, supporting consistent promotions during 12 years of employment with the agency. He also argues that the second and eighth Douglas factors--"the employee's job level and type of employment, including supervisory or fiduciary role, contacts with the public, and prominence of the position" and "notoriety of the offense of its impact upon the reputation of the agency," id.--are in no way implicated here since he did not supervise others, he worked in obscurity, and there was no evidence that anyone other than a few fellow employees knew of his experimentation with cocaine. As to the "nature and seriousness of the offense," "potential for the employee's rehabilitation," and "mitigating circumstances surrounding the offense," id. (factors 1, 10, and 11, respectively), he argues that under applicable regulations, he could and should have been classified merely as a "drug experimenter" rather than a "drug user" since his drug use was an isolated lapse of good judgment that was never repeated. He also asserts that his experimentation was the spontaneous result of peer pressure, not a premeditated decision, that he has never repeated the offense, and that he has otherwise shown excellent job performance. All this, he argues, demonstrates a high potential for rehabilitation, Brief of Petitioner at 25 (see Douglas factor 10), or indeed, that he has already been rehabilitated.
 
 
 8
 While we agree that these factors do indeed weigh against the maximum penalty of removal, our inquiry does not end there. We must also examine the Board's analysis of other Douglas factors which the agency contends support removal, but which the petitioner argues should instead temper the penalty. If the agency's reliance on these other Douglas factors was reasonable, we must affirm.
 
 
 9
 Wagstaff also argues that "the effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform assigned duties," Douglas, 5 M.S.P.R. at 305 (factor 5), were minimal: Allegedly the cocaine simply gave him a headache. Brief of Petitioner at 23. Evidence of his ability to perform on the day in question is scant except for his own testimony. As to the confidence of Wagstaff's supervisors, it is apparently mixed. While his immediate supervisor wanted him back, others wanted him removed. Further, while he may be correct as to the effect of drug use on him in this particular case, as we discussed above in connection with nexus, generally drug use during the work day by an employee can be quite serious. Certainly, drug use by an airplane mechanic could have a very serious effect on his ability to perform at a satisfactory level, since airplane systems must be attended to with precision. The results of careless work could be catastrophic. A single mistake by a drug-impaired mechanic could cause an aircraft to crash, possibly injuring or killing crew members and perhaps even persons on the ground.
 
 
 10
 Similarly, Wagstaff's argument that, given his good job performance and avoidance of further drug use, "the adequacy and effectiveness of alternative sanctions to deter such conduct in the future," Douglas, 5 M.S.P.R. at 306 (factor 12), militate against removal. While a lesser penalty may have provided an adequate deterrent as to Wagstaff himself, who apparently has never repeated the drug use, it is not clear that other employees would not interpret mild punishment of Wagstaff as a sign that the agency does not view a single incident of cocaine use by jet mechanics immediately preceding duty to be serious.
 
 B
 
 11
 Wagstaff's further arguments concern "consistency of the penalty with those imposed upon other employees for the same or similar offenses" and "consistency of the penalty with any applicable agency table of penalties," id. at 305 (factors 6 and 7, respectively). Although Wagstaff produced no evidence, he implied that for arguably comparable transgressions other employees were given only reprimands or suspensions, but in no case removal. Even assuming this is so, the duties of those other employees may have been less sensitive. Crewmen of B-52, F-4, and F-16 aircraft "stake their lives on the quality of the work performed by the appellant," and his work ordinarily is not reviewed prior to take-off. Wagstaff, slip op. at 7. We cannot say that the Board's failure to find that unjustifiably disparate penalties were proven by Wagstaff is unsupported by substantial evidence.
 
 
 12
 Wagstaff points to paragraph 11(b) of Attachment 3 to Air Force Regulation 40-750 (July 23, 1982), a guide to disciplinary actions, which generally recommends for a first offense of drug use "Reprimand to 5-Day Suspension." Appendix at 55. But the guide is only precatory, not mandatory. It does not list required penalties, but only typical penalties. Indeed, the guide specifically indicates that it
 
 
 13
 does not dictate the penalty to be imposed for a particular (or comparable) offense; rather, it establishes the range of penalties within which the penalty imposed usually falls. Unless otherwise restricted, management may impose no penalty at all or has available a choice of severity of action ranging from oral admonishment to removal.
 
 
 14
 Appendix at 53 (emphasis added).
 
 
 15
 In sum, given the nature of Wagstaff's work as a mechanic on highly complex and sophisticated military aircraft, in which a mistake on his part could result in a fatal air disaster, we cannot say that the agency's decision to remove him for a one-time use of cocaine on his lunch hour was unreasonable.